Sucesores de José González & Co., *S. en C.*, Plaintiff and Appellant, *v.* Rafael A. Buscaglia, Treasurer of Puerto Rico, Defendant and Appellee.

No. 8779.   Argued December 7, 1943.—Decided March 13, 1944.

*D. Guerrero Noble* for appellant.   *M. Rodríguez Ramos, Acting Attorney General,* and *G. Benítez Gautier, Deputy Attorney General,* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

The two questions of law raised by this appeal do not require a detailed statement of facts.   It is enough to say that the first cause of action alleged in the complaint is based on the fact that appellant filed its income returns for the years 1925–28 inclusive on time;   that after investigating said returns the Treasury Department assessed a deficiency for each one of the said years and, feeling aggrieved, the taxpayer appeared before the Board of Review and Equalization which determined and fixed anew the tax corresponding to each one of said tax years.   As a result of extensions which the taxpayer requested of the Treasurer and offers to

pay which never materialized, there elapsed exactly six years from the time when the Board of Review and Equalization determined the tax for the last of the tax years without said taxes having been paid. At the end of the above-mentioned six years appellant prayed for and obtained from the board a reconsideration of the taxes already determined and fixed by it. To that end the board asked the Treasurer to return the record and said officer, upon returning it, wrote to the board calling to its attention its lack of jurisdiction to reconsider the holding rendered by it about six years before. However, the board reconsidered the case, struck out entirely the tax for the year 1928, holding that the same had prescribed, and it lowered the tax for the remaining tax years in controversy. In spite of this, alleging that the acts of the board above referred to were void for lack of jurisdiction, the Treasurer insisted on collecting the tax originally fixed by said board, and, threatening to institute distraint proceedings, succeeded in having the taxpayer pay it under protest.

The second cause of action is based on deficiencies assessed for the tax years in question. Appellant admits that the Treasurer took steps towards the collection of these deficiencies by means of notices of attachment filed beginning with the year 1935, and that he went so far as to publish notices for the sale of the taxpayer's property which had been attached, but that at no time did he effectuate the sale and the collection of the tax. However, it appears from the evidence that, similar to that which took place with regard to the tax on which the first cause of action is based, the delay in the collection of the tax on which the second cause of action is based was due to the above-mentioned efforts to secure an extension and the promises to pay made by appellant which never materialized. It was not until June 6, 1941, that the taxpayer paid under protest the taxes on which both causes of action are based.

■■ As to the first cause of action, the Treasurer holds that plaintiff can not recover the taxes on which the same is based because the board lacked power to reconsider its own holding after the expiration of the term of 30 days provided for by §310 of the Political Code as amended by Act No. 75 of 1923 (Laws of 1923, p. 604).

For the purpose of deciding this first matter, the provisions of §310 of the Political Code, as amended, and which literally read as follows, will be sufficient:

"Said Board of Review and Equalization shall meet in regular session in the months of January, May, and September of each year, and in special session at such other times as may be necessary in the opinion of the chairman. At said meetings the board shall hear appeals received and shall decide questions arising before the board relative to the greater and lesser amount at which property may be assessed for purposes of taxation, or to the amount of taxes or to exemptions from taxation; or to fix the income tax of any taxpayer; and upon recording such determination, the board shall correct returns, and liquidate taxes to be levied on income returns filed, in accordance with its decision, and shall report the facts to the Department of Finance for such corrections, cancellations or issuance of receipts as may be proper. Said board shall have power to strike out, lessen or increase the valuations made in any schedule returned to it, whether or not complaint has been made in connection therewith, and to decide all other complaints in regard to the levying of property and income taxes, and to correct all errors as such errors are brought to its attention. *For just cause the board may also reconsider at its discretion and in its judgment, any decision made by it when so requested by a taxpayer within the unextendible term of thirty days counting from the date of service of notice.* In performing the duties imposed on it by this Title, said board may examine, under oath or affirmation, any person who may have knowledge or information concerning the value of property subject to taxation, and any member of the board may administer the oath or affirmation." (Italics ours.)

The legal provisions above transcribed conferred upon the extinct Board of Review and Equalization the power to reconsider for just cause, any decision made by it, *when so*

*requested by a taxpayer within the unextendible term of 30 days counting from the date of service of notice.*

We have already seen that in the instant case the court *sua sponte* reconsidered and lowered the tax which it had determined and fixed more than six years from the date of service of notice on the taxpayer. The board's lack of jurisdiction is manifest. This is a case of *lex scripta* where no argument is possible. This notwithstanding, the taxpayer's lawyer, erroneously interpreting the legal provision in question, strains to find in the said Section two modes of reconsideration; first, that which may take place upon the petition of the taxpayer, and which is limited to the term of thirty days to which we have previously adverted; and the second, that which according to appellant, takes place upon the board's initiative, there being no prescriptive term for said reconsideration.

Appellant seeks to find this unlimited power of reconsideration in that part of §310 of the Political Code which provides that the board shall have the power to strike out, lower, or increase the valuations made in any schedule. However, appellant loses sight of the fact that this power which the law conferred on the board referred to its powers in relation to the appeals filed before it, and it had nothing to do with the power to reconsider, which it could exercise within the term of thirty days, counting from the date of service of notice of its decision upon the taxpayer.

Since the board lacked the power to reconsider its original decision after the expiration of the 30-day term provided for in the law, we have to agree with the lower court that defendant Treasurer acted correctly in ignoring the tax fixed by virtue of said illegal reconsideration, and in collecting and retaining the tax originally determined and fixed by the board.

We will now proceed to consider the second matter involved in this appeal.

■ With regard to the tax which serves as a basis for the second cause of action, the Treasurer holds that the taxpayer again has no right to recover it, in spite of the fact that he received payment under protest after the expiration of the terms provided for in §§60 (*a*) (1) and 61 (*c*) of the Income Tax Act.

The Sections to which we have just adverted provide as follows:

"Section 60(*a*)(1).—The amount of income and excess-profits and the amount of income taxes imposed by this Act or by Income Tax Act No. 59 of 1917, Income Tax Act No. 80 of 1919, Income Tax Act No. 43 of 1921, or by any of said Acts, as amended, shall be assessed within five years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period.

"Section 61(*c*).—Where the assessment of the tax is made within the period prescribed in section 60 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax. Nothing in this Act shall be construed, as preventing the beginning, without assessment, of a proceeding in court for the collection of the tax at any time before the expiration of the period within which an assessment may be made."

The letter of the law is clear and if the attendant circumstances permitted us to abide by what is prescribed in said legal provisions, we would be forced to reverse the judgment in so far as the second cause of action is concerned. But appellant's own acts in requesting extensions and making promises to pay, which never materialized, causing the Treasurer who relied on said promises to allow the term fixed by law for making the collection to expire, prevent appellant from benefiting from the consequences of the situation which it itself brought into being. If both the Treasurer and the taxpayer had agreed upon a postponement of the collection of the tax until after the expiration of the term provided for by law, that agreement would have been legal

and it would not have prevented the Treasurer from collecting the tax in accordance with the same. *Brown & Sons Co.* v. *Burnet*, 282 U. S. 283. Cf. *Stange* v. *United States*, 282 U. S. 270, and *Aiken* v. *Burnet*, 282 U. S. 277. If the prescriptive term may be extended by means of an agreement therefor, it may equally be understood to have been extended when, there being no such agreement the delay, is caused by the acts of the taxpayer hereinbefore described. In a case where the taxpayer's conduct prevented the fixing and collecting of the tax within the term provided by law, Mr. Justice Cardozo, speaking for the Supreme Court of the United States, said:

"The applicable principle is fundamental and unquestioned. 'He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him in effect "this is your own act, and therefore you are not damnified."' (Citing authorities.) Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. (Citing authorities.) A suit may not be built on an omission induced by him who sues. (Citing authorities.)" *Stearns Co.* v. *United States*, 291 U.S. 54, 61.

What has been said is enough to hold that appellant does not have the right to recover from the Treasurer what the latter collected after the term for so doing had expired, inasmuch as the delay was caused by the acts of the taxpayer himself.

For the reasons stated the judgment is affirmed.